UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cequent Performance Products, Inc., | ) | Case No. 1:14-cv-08457 |
| | ) | |
| Plaintiff, | ) | Judge |
| | ) | |
| vs. | ) | |
| | ) | |
| Let's Go Aero, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## Petition to Compel Arbitration

In accordance with 9 U.S.C. § 4, Cequent Performance Products, Inc. ("Cequent") petitions this Court for an order directing Let's Go Aero, Inc. ("LGA") to proceed to arbitration in Chicago, Illinois, in accordance with the terms of an arbitration clause in a January 28, 2012, contract between the parties and, in support states as follows:

## Summary of Case

1. LGA and Cequent previously resolved litigation in the United States District Court for the District of Colorado over Cequent's sale of certain cargo management products, to which LGA claimed intellectual property ("IP") rights.

2. In settling their dispute, the parties agreed – in a broad arbitration clause obtained from the American Arbitration Association – that any future dispute over that subject matter must be resolved through arbitration in Chicago, Illinois.

3. LGA breached the arbitration clause by filing a new lawsuit earlier this year in Colorado federal court, again asserting its purported IP rights against Cequent's alleged sales of the same cargo products that LGA previously challenged.

{5187179:2}

4. Because all of LGA's claims are within the scope of the arbitration clause, this Court should compel arbitration.

## The Parties

5. Cequent is a Delaware corporation with a principal place of business in Michigan.

6. LGA is a Colorado corporation with a principal place of business in Colorado.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the petition arises under federal law, namely the Federal Arbitration Act.

8. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

9. This Court has personal jurisdiction over LGA because, among other things, it consented to arbitrate claims within this judicial district.

10. Venue is proper under 9 U.S.C. § 4 because this district contains the Chicago, Illinois, location that the parties selected for arbitration.

## Relevant Facts

**I.  Prior License**

11. The parties' rocky relationship began in January 2008 when they entered into a license agreement (the "License") that permitted Cequent to sell certain cargo-management products over which LGA claimed to have enforceable IP rights, including

patent rights.[1] In return for the purportedly exclusive license, Cequent paid LGA over $586,000. (*See* Compl. ¶ 3 in *Cequent v. Let's Go Aero*, D. Colo., Case No. 1:10-cv-02921-MSK-CBS ("*LGA I*").)[2]

12. Those products, which were identified in Exhibit 1 to the License are the: "Pixie," "Silent Hitch Pin," "Gear Cage," "Gear Deck," "Gear Space," "Twin Tube," "Juice Box," and "Gear Bed." (collectively, the "Products"). (*See* Ex. 1 to License.)

13. The Products are vehicle cargo products. The "silent hitch pin" is a spring-loaded pin that holds a rear vehicle hitch together without rattling, the "Pixie" is a hitch-mounted bike rack, and the other products hitch to the back of vehicles to provide additional cargo space. The photograph below of the GearCage from LGA's website is illustrative of the technology at issue.


GearCage

(Captured from www.letsgoaero.com/GearCage-SP-6-p/gcsp-6htm on Sept. 17, 2014.)

14. Cequent later discovered that it received nothing in return for its cash payments because LGA had no patent rights to most, if not all, of the products covered by the License due to LGA's failure to pay patent maintenance fees (resulting in loss of

---

[1] A true copy of the License is attached as Exhibit A.
[2] A true copy of the Complaint that Cequent filed in *LGA I* is attached as Exhibit B.

patent rights), its misrepresentation of the scope of its patents or patent applications, and other reasons. (*LGA I* Compl. ¶ 4-5.)

15. Thus, anyone could manufacture and sell the Products without having to pay LGA, depriving Cequent of the benefit of its bargain.

## II. First Lawsuit and Settlement with Arbitration Clause

16. When LGA refused to acknowledge or remedy its breaches of the License, Cequent filed the *LGA I* case in the United States District Court for the District of Colorado.[3]

17. LGA counterclaimed in *LGA I*, alleging that Cequent's alleged sales of the Products violated LGA's purported IP rights. (*See LGA I* Am. Countercl. ¶ 113.)[4]

18. According to LGA's amended counterclaim in *LGA I*, the Products were covered by patents, patent applications, and registered trademarks. (*See LGA I* Am. Countercl. ¶ 113.)

19. Due to the mediating efforts of Magistrate Judge Craig Shaffer of the Colorado district court, the parties settled under a January 28, 2012, "Settlement Agreement and Release" (the "Settlement").[5]

20. As part of the Settlement, the parties agreed that, if there was any future dispute "arising from or relating to" the Settlement, the parties would be required to try and negotiate a settlement and, if unable to amicably resolve the matter, resolve the matter through arbitration. (Settlement ¶ 23.)

---

[3] Although Cequent is headquartered in Michigan, it sued in Colorado to comply with the License's forum selection clause. (*See* License ¶ 10.)
[4] A true copy of LGA's Amended Counterclaim in *LGA I* is attached as Exhibit C.
[5] A true copy of the Settlement is attached as Exhibit D.

{5187179:2}   4

21. The arbitration clause – a standard clause that the parties obtained from the American Arbitration Association – states:

> In the event of <u>any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof</u>, the Parties shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties.
>
> If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. Venue for the arbitration proceedings shall be in Chicago, Illinois, and the arbitration shall be conducted by a single neutral arbitrator.

(Settlement ¶ 23 (emphasis added).)

22. The Settlement also terminated the License. (*Id.* ¶ 1.)

### III. Second Lawsuit

23. On June 6, 2014, LGA a new lawsuit in the United States District Court for the District of Colorado, entitled *Let's Go Aero, Inc. v. Cequent Performance Products, Inc.*, Case No. 1:14-cv-01600-RM-MEH, ("*LGA II*") again claiming that Cequent's sales of at least some of the Products violates LGA's purported IP rights. (*See LGA II* Compl. ¶ 8-10.)[6]

24. The same lawyer who represented LGA in *LGA* I and negotiated the Settlement on its behalf, Thomas Haskins, represents LGA in *LGA II*.

---

[6] A true copy of LGA's original complaint in *LGA II* is attached as Exhibit E.

25. On June 23, 2014, LGA amended its complaint to add U-Haul as a defendant. (*See LGA II* Am. Compl.)[7]

26. On August 7, 2014, LGA again amended its complaint. (*See LGA II* 2d Am. Compl.)[8] In the second amended complaint, LGA dropped U-Haul as a defendant and added two counts. The two new counts rely on the same underlying facts as were presented in the previous complaints.

27. According to LGA's second amended complaint, the termination of the License – a termination triggered by Paragraph 1 of the Settlement – ended Cequent's right to sell the Products and, therefore, makes Cequent's alleged ongoing sales of one or more of the Products actionable in tort. (*LGA II* 2d Am. Compl. ¶ 11-16.)

28. In *LGA II*, LGA has challenged Cequent's sales of the same products that it challenged in *LGA I*, namely the "Silent Hitch Pin," "Pixie," and "GearCage." (*Compare LGA I* Am. Countercl. ¶ 113 *with LGA II* 2d Am. Compl. ¶¶ 12-13.)

29. And LGA asserts the same patents and patent applications that it asserted in *LGA I*. (*Id.*)[9]

30. Although LGA uses various names in *LGA II* to describe its causes of action such as "Declaratory Judgment," "Unjust Enrichment and Accounting," and "Civil

---

[7] A true copy of LGA's first amended complaint in LGA II is attached as Exhibit F.
[8] A true copy of LGA's second amended complaint in LGA II is attached as Exhibit G.
[9] The majority of LGA's claims for relief do not specify which patents, trademark, or copyrights it is accusing Cequent of infringing which, but for the arbitration clause, would subject the complaint to a Rule 12(b)(6) motion. (*See* 2d Am. Compl., Claims for Relief 1-5, 8, and 10-12.) Nevertheless, all of the patents included in its allegations were included in the License, which the parties terminated as part of the Settlement. U.S. Patent Nos. 8,079,613 and 8,079,419 issued after the commencement of *LGA I* but before the Effective Date of the Settlement. These patents issued from applications (U.S. App. Nos. 11/382,917 and 10/711,961, respectively) that were part of the parties' License. (*See LGA I* Am. Countercl. ¶ 113-114 (listing patents, patent applications, and trademarks that were part of the parties' License).)

Conspiracy," the gist of each claim is the same: that Cequent's alleged sale and marketing of the Products after the Settlement terminated the License violates LGA's purported IP rights.

31. Cequent moved the Colorado district court to compel arbitration and to stay *LGA II*.[10]

32. LGA opposed the motion and objected to it on the basis of venue because the arbitration clause requires arbitration to occur in Chicago, Illinois.[11] Under the Federal Arbitration Act, as interpreted by the U.S. Court of Appeals for the 10th Circuit, the proper venue to compel arbitration is the district court encompassing the arbitration location required by the clause.

33. In reply, Cequent will ask the Colorado district court to either stay the case pending this Court's resolution of this petition or to dismiss *LGA II* for improper venue. Cequent's motion remains pending.

34. Because each of LGA's claims against Cequent arise from or relate to the Settlement, this Court should compel arbitration.

## Law and Argument

### I. Law Governing Arbitration Clauses

35. Section 4 of the Federal Arbitration Act empowers district courts to compel arbitration when there is an applicable agreement to arbitrate and a party refuses to arbitrate. 9 U.S.C. § 4.

---

[10] A true copy of Cequent's motion to compel arbitration is attached as Exhibit H.
[11] A true copy of LGA's response to Cequent's motion to compel arbitration is attached as Exhibit I.

36. Courts in this district answer two questions to decide arbitrability: (i) whether the parties are bound by an arbitration agreement; and (ii) whether the arbitration clause applies to a particular type of controversy. *See, e.g.*, *Marzano v. Proficio Mortgage Ventures, LLC*, 942 F. Supp. 2d 781, 788 (N.D. Ill. 2013), *citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

37. LGA does not dispute that it is bound by the arbitration clause in the Settlement, but alleges that the claims it asserts in *LGA II* are not within the scope of the arbitration clause. Therefore, this Court need only address the second question.

38. As to scope, the Supreme Court has recognized the "liberal federal policy favoring arbitration agreements." *See Green Tree Fin. Corp. v. Randolph*, 531 US 79, 91 (2000).

39. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 24-25 (1983).

40. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

41. The clause at issue applies to "any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof." (Settlement ¶ 23.)

42. Courts unanimously agree that this "arising from or relating to this Agreement" language – which is the standard AAA language – is "extremely broad," creates a "presumption of arbitrability," and "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033-34 (7th Cir. 2012); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (describing such a clause as "extremely broad and capable of an expansive reach"); *City and County of Denver v. District Court in and for City and County of Denver*, 939 P.2d 1353, 1367 (Colo. 1997) (en banc) (noting "typical American Arbitration Association clause containing the words 'arising out of or relating to the agreement' is 'broad'"), *quoting PSI Energy, Inc. v. Amax, Inc.*, 644 N.E.2d 96, 100 (Ind. 1994); *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 8-9 (1st Cir. 2014) (holding "arising out of or relating to this agreement" is broad).

43. The presumption of arbitrability triggered by the broad clause in the Settlement can only be rebutted with "the most forceful evidence of a purpose to exclude the claim from arbitration." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

II. **This Dispute Is Entirely Covered By The Broad Arbitration Clause**

44. LGA's claims all relate to the Settlement and are covered by the arbitration clause for at least three separate reasons.

45. First, LGA's claims about Cequent's silent hitch pin sales necessarily "relate to" the Settlement.

46.     The reason is that resolving that claim will necessarily require looking to the Settlement to determine whether Cequent complied with or exceeded the "phase out" quantity allowed by Paragraph 2 of the Settlement.

47.     LGA alleges that Cequent is liable to LGA for selling Silent Hitch Pin products beyond a 23,300 unit "phase-out" permitted by the Settlement (*LGA II* 2d Am. Compl. ¶ 24-26, 30, 36; *see* Settlement ¶ 2, Ex. 1 (permitting phase out of 25,792 silent hitch pins).)

48.     If Cequent sold no more pins than the Settlement permitted, then LGA's silent hitch pin claims necessarily fail. Indeed, acknowledging the Settlement allowed a "phase out" of the pins, LGA premises those claims on its "belief" that the contractually-permitted "phase out" has been exceeded, i.e., that Cequent breached the Settlement. (*LGA II* 2d Am. Compl. ¶ 25.) Part of deciding LGA's claims will be testing LGA's "belief" that Cequent breached the phase-out provision.

49.     Second, LGA premises its claims and its allegations on the Settlement's termination of the License.

50.     According to LGA, the Settlement terminated the License effective January 28, 2012, and ended Cequent's right to sell and market the Products, including the Pixie Bicycle Rack, Silent Hitch Pin, and GearCage. (*LGA II* 2d Am. Compl. ¶ 11-15.)

51.     LGA repeatedly premises its claims upon allegations that Cequent's continuing to sell the Products, with associated trademarks and allegedly copyrighted brochures and marketing materials, after termination of the License is tortious. (*See, e.g., LGA II* 2d Am. Compl. ¶ 43 ("LGA conferred a benefit when Cequent retained the LGA

Inventions, LGA Copyrights, and LGA Trademarks and Sales Media acquired from LGA pursuant to the Nondisclosure and License Agreements after the voluntary agreement to terminate the License Agreement on January 28, 2012.").)

52. Thus, LGA's claims arise out of or relate to the Settlement because each is premised on the termination of the License caused by the Settlement.

53. Indeed, LGA deemed the Settlement's termination of the License to be so important to its claims that its second amended complaint uses the phrase "termination of the License Agreement" 50 different times.

54. Third, the Settlement resolved a lawsuit between Cequent and LGA, in which LGA alleged that Cequent's sale of certain cargo products violated LGA's IP rights.

55. The subject matter of LGA's claims in *LGA II* is the same as what was resolved by the Settlement: LGA's claims that Cequent's sale of the same cargo products previously at issue violates LGA's IP rights.

56. Because LGA's claims are directed to the same subject matter as what was addressed and resolved in the Settlement, these new claims relate to the Settlement for this additional basis.

57. That LGA crafted its allegations to target only alleged conduct by Cequent that occurred *after* the execution of the Settlement does not push this case beyond the scope of the arbitration clause. (*See LGA II* 2d Am. Compl. ¶ 44 (alleging that Cequent violated LGA IP rights by "using them to market and sell LGA's products as its own following the January 28, 2012 termination of the License Agreement").)

{5187179:2} 11

58. While Paragraph 6 of the Settlement specifically excludes from the releases in Paragraphs 1, 4, and 5 any unlawful use of intellectual property "occurring after the Effective Date" of the Agreement, that paragraph tellingly does not place any limitation on the arbitration clause in Paragraph 23.

59. And the arbitration clause itself does not contain any limit as to future disputes regarding claims of unlawful use of intellectual property.

60. Thus, the broad arbitration clause applies to LGA's action for relief from Cequent's alleged post-settlement sales of the Products.

### Relief Requested

Cequent respectfully requests that this Court grant this Petition and order LGA to arbitrate all claims that it asserts in *LGA II* in Chicago, Illinois, in accordance with the terms of the Settlement's arbitration clause.

Dated: October 27, 2014

    s/ Matthew J. Cavanagh
Richard N. Kessler (6183140)
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
300 N. LaSalle Street, Ste. 2100
Chicago, Illinois 60654
t 312.280.0111 | f 312.280.8232
rkessler@mcdonaldhopkins.com
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for
Cequent Performance Products, Inc.*