**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CEQUENT PERFORMANCE PRODUCTS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LET'S GO AERO, INC., ) <br> ) <br> Defendant. ) | Case No. 1:14-cv-08457 <br><br> Judge Charles P. Kocoras <br><br> Magistrate Judge Susan E. Cox |

<u>**RESPONDENT LET'S GO AERO, INC.'S RESPONSE IN OPPOSITION
TO CEQUENT'S PETITION TO COMPEL ARBITRATION [DOC. #1]**</u>

Respondent, Let's Go Aero, Inc. ("LGA"), by its undersigned counsel, submits this response to the Petition to Compel Arbitration [Doc. #1] filed by Petitioner, Cequent Performance Products, Inc. ("Cequent"), and in opposition thereto states:

**INTRODUCTION**

Cequent petitions for an order compelling LGA to arbitrate the claims asserted in LGA's Second Amended Complaint ("SAC") filed in the federal court in Denver, Colorado ("Colorado Lawsuit"), under an agreement signed by LGA and Cequent to resolve an earlier lawsuit that was also filed in that Court ("Settlement Agreement," attached as Exhibit F). As this Court knows, this is the third time that Cequent has sought an order from a federal court to compel arbitration. First, the federal district court in Colorado held, in ruling on a Motion to Compel filed by Cequent there, that "the Court lacks jurisdiction to compel arbitration in Chicago, Illinois." Exhibit A, Order of January 28, 2015 at 20. Second, Cequent appealed to the Federal Circuit Court of Appeals, and told that Court: "Because this Court decides the arbitrability question *de novo*, it would be more efficient to decide that question now, rather than remanding to have the Illinois district court decide Cequent's petition to compel arbitration[.]" Exhibit B, Appellant's

Reply Brief dated September 28, 2015 at 1, n.1. The appellate court, however, also acknowledged that it could not enter an order compelling arbitration, and dismissed the appeal.[1] Exhibit C, Opinion dated March 3, 2016 at 2 ("Although the [Colorado] order refuses to compel arbitration, . . . our ruling on arbitrability would be advisory to that refusal, which undoubtedly is compelled by an independent ground [of Tenth Circuit precedent] we cannot disturb.") (bracketed language added). Thus, LGA's Colorado Lawsuit, filed two years ago on June 6, 2014, has gone nowhere, and Cequent has yet to even answer LGA's allegations.

LGA initiated the Colorado Lawsuit against Cequent for infringement of LGA's patent and intellectual property rights and other misconduct which occurred after the parties had settled previous litigation in 2012. LGA will not spend time correcting the inaccurate characterizations of the prior lawsuit in the Petition (which Cequent calls "*LGA I*") other than to note that none of the factual allegations in the SAC relate to or arise from any of the conduct at issue in *LGA I*. Despite Cequent's argument otherwise, LGA is not trying to re-litigate the same improper sales and same infringing conduct as before.

The Settlement Agreement resolving *LGA I* contained an arbitration provision that Cequent improperly invoked to bar LGA's lawsuit from proceeding in Colorado, despite an explicit venue selection clause that established Illinois as the arbitration venue, if any. Importantly here, Cequent moved to compel arbitration *in Colorado,* despite controlling Tenth Circuit law holding that even if claims in a lawsuit filed in the Colorado District Court are

---

[1] Cequent would have this Court believe that the Federal Circuit dismissed Cequent's appeal because LGA "flip-flopped" regarding which Court (Colorado or Illinois) was the proper venue. Cequent's Motion to Lift Stay [Doc. 27] at 3. Respectfully, nothing in the Federal Circuit's opinion supports that assertion, and the appeal was dismissed because Cequent sought an advisory opinion.

2

arbitrable, the Colorado District Court has no authority to compel arbitration in other federal districts. *Ansari v. Qwest Comm. Corp.*, 414 F. 3d 1214, 1219-20 (10th Cir. 2005).

When confronted by LGA with the Tenth Circuit's holding of *Ansari*, Cequent then elected to stand by its Motion to Compel as a delaying tactic. Despite knowing that the Colorado District Court could not grant it any enforceable relief, Cequent pressed that Court to "compel arbitration in Chicago, Illinois," in hopes of eliciting an advisory opinion. Upon succeeding in getting one from the Colorado Court, Cequent consumed yet another year and a half with an appeal that, too, was doomed from the start, and was ultimately dismissed because the Federal Circuit could not override *Ansari* and thus could grant no effective relief. By pursuing these fruitless delaying processes, Cequent has waived any right to compel arbitration here, as it belatedly seeks to do now.

As will also be shown below, even if the merits of Cequent's Petition are entertained, the Petition should be denied. None of LGA's claims in the Colorado Lawsuit relate to either breach or non-performance of the Settlement Agreement. In the two years since LGA's suit was filed, Cequent has taken virtually no action within its power to enforce the dispute resolution clause on which its Petition is entirely based — having never "consult[ed] and negotiate[d]" with LGA through mediation (Settlement Agreement at ¶ 23) nor by initiating an arbitration proceeding at any time. Thus, Cequent's Petition should be denied as shown below.

## ARGUMENT

Cequent's Petition must be denied because Cequent has, through its conduct, waived its right to compel arbitration. Further, on the merits, the Petition fails because the arbitration provision that Cequent invokes does not apply. Consequently, the Petition should be denied.

## I. The Law Governing Cequent's Petition.

In *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, --- F.Supp.3d ----, 2015 WL 6318272 (N.D. Ill. 2015), this Court summarizes arbitration law in this Circuit:

> [A]s the Seventh Circuit has said repeatedly[], there is no national policy favoring arbitration. . . . Arbitration agreements are optional and enforced just like other contracts. "The Federal Arbitration Act eliminates hostility to private dispute resolution; it does not create a preference for that process." . . . People do not "violate" or "undermine" any federal policy if they litigate rather than arbitrate. Federal policy favors arbitration only in the sense that it favors contracts in general. . . . A party can be forced to arbitrate only those matters that it has agreed to submit to arbitration. . . . "[N]othing beats normal rules of contract law to determine what the parties' agreement entails."

*Id.* at *2 (citations omitted). *See also United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Among the "first principles" to consider, the Seventh Circuit advises: "Although the Federal Arbitration Act favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration." *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008) (quotation and citations omitted).

Federal courts apply state-law principles of contract formation to determine if a contract's arbitration clause applies to a given dispute. *Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 662 (7th Cir. 2002). In Illinois, "the objective in interpreting a contract is to ascertain and give effect to the intent of the parties." *Carey v. Richards Bldg. Supply Co.*, 367 Ill.App.3d 724, 856 N.E.2d 24, 27 (2d Dist. 2006) (citation omitted). What is most important are "the objective manifestations of the parties, including the language they used in the contract." *Id.* (citation omitted). If the contract's language is plain, the agreement must be enforced as written. *Id.*

## II.     Cequent Has Waived Any Right to Arbitrate.

Initially, Cequent's discussion of the governing law is incomplete. According to Cequent, the Court's task is no more than to determine the second of two questions to be answered on arbitrability: (1) whether the parties are bound by an arbitration argument; and (2) whether the arbitration clause applies to a particular type of controversy. Petition at 8. This Court, however, must answer ***both*** questions in resolving Cequent's Petition.

The Court must determine if the parties are bound by an arbitration agreement because since the filing of the Petition, Cequent has waived its right to attempt to enforce the arbitration provision by acting inconsistent with any right to arbitrate. Thus, before the Court considers any of Cequent's arguments that the claims in the Colorado Lawsuit are arbitrable, the Court must address if Cequent has waived any right it might previously have had to compel arbitration.

Cequent has waived its right to arbitrate via several procedural choices made since the Petition was filed. First, Cequent elected not to withdraw its Motion to Compel Arbitration in Colorado after being informed that LGA had invoked a venue objection that, under Tenth Circuit precedent, ***prevented*** the Colorado Court from granting Cequent's Motion to Compel. Next, Cequent asked the Colorado District Court to issue an advisory opinion on arbitrability anyway, knowing again that regardless of that decision, the Colorado Court could not compel arbitration. Thereafter, when the Colorado judge did as Cequent asked, Cequent elected to appeal to the Federal Circuit Court of Appeals, rather than to the Tenth Circuit Court of Appeals, knowing full well that unlike the Tenth Circuit, the Federal Circuit was powerless to change the precedent that prevented the Colorado District Court from compelling arbitration. None of these actions were necessary to enforce Cequent's putative right to arbitrate, and in fact, all of them resulted in a delay to this Court hearing the Petition, which is inconsistent with a party's obligation to pursue

its right to arbitrate with all diligence. Thus, by this conduct, singly or collectively, Cequent waived any right to arbitrate.

The record shows Cequent's waiver. By no later than LGA's filing of its brief opposing Cequent's Motion to Compel in the Colorado Lawsuit, which cited *Ansari* for the proposition that the Colorado Court could not compel arbitration, *see* Exhibit D, Plaintiff Let's Go Aero, Inc.'s Response in Opposition to Cequent's Motion to Compel Arbitration, Civ. Action No. 14CV1600-RM-MEH (U.S.D.Ct. Colo) at 13, Cequent knew it had sought to compel in the wrong Court. However, instead of withdrawing its Motion to Compel Arbitration because it was filed in the wrong Court, Cequent elected to ***change the relief it sought in its motion***, inviting the Colorado District Court to undertake an advisory arbitrability analysis that Cequent knew could have no consequences except delay. Despite Cequent's acknowledging that under the controlling Tenth Circuit law, "a district court ***cannot compel arbitration outside of its district***," Exhibit E, Reply in Support of Cequent's Motion to Compel Arbitration at 2 ("Cequent Reply"), Cequent urged the Colorado District Court to rule on arbitrability anyway. Critically here, Cequent argued to the Colorado Court that:

> The Court should stay this case pending the outcome of Cequent's petition before the Illinois district court or it should dismiss this case for improper venue. ***If, however, this Court believes it has the authority to compel arbitration in Chicago, Illinois, then it should do so.***

Exhibit E, Cequent Reply at 2 (emphasis added).

Long-standing law in the Seventh Circuit provides that a party may implicitly waive its right to arbitrate through conduct, and that it does so when it elects to proceed in the wrong forum. In *St. Mary's Med. Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc.*, 969 F.2d 585 (7th Cir. 1992), the Court held: "Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is

6

waiver of the right to arbitrate." *Id.* at 587. The Court stated that "[w]aiver can either be express or inferred" and that "[t]he essential question is whether, ***based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate***." *Id.* at 588 (emphasis added). To determine whether a party has waived arbitration, courts "examine the totality of the circumstances and determine whether . . . the party . . . has acted inconsistently with the right to arbitrate." *Sharif v. Wellness Internat'l Network, Ltd.*, 376 F. 3d 720, 726 (7th Cir. 2004).

In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388 (7th Cir. 1995), the Seventh Circuit further explained that:

> In determining whether a waiver has occurred, the court is not to place its thumb on the scales; the federal policy favoring arbitration is, at least so far as concerns the interpretation of an arbitration clause, merely a policy of treating such clauses no less hospitably than other contractual provisions. . . . To establish a waiver of the contractual right to arbitrate, a party need not show that it would be prejudiced if the stay were granted and arbitration ensued.

*Id.* at 390. As held by the *Cabinetree* Court, "invoking judicial process is *presumptive* waiver" of the right to arbitrate. *Id.* at 390.

Of significance here, the *Cabinetree* Court held that that the defendant, who removed the Plaintiffs' suit from state to federal court, waived its right to arbitrate by its improper choice of forum:

> Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution. . . . Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election—against arbitration.

*Id*. at 391. Under *Cabinetree* and *St. Mary's*, Cequent waived its right to arbitrate by selecting the Colorado District Court and the Federal Circuit as forums to litigate, despite knowing no affirmative relief could be obtained.

Asking a court for any relief beyond just an order compelling arbitration or for a stay pending arbitration may also be a waiver. *WorldSource Coil Coating, Inc. v. McGraw Construction Co., Inc.*, 946 F.2d 473 (6th Cir. 1991) (party's action in seeking an injunction and damages, even though coupled with request to arbitrate, was an abandonment of the right to compel arbitration under Illinois law). The federal courts have repeatedly recognized that a waiver can occur by conduct that lacks diligence in getting the decision to compel arbitration before the appropriate decision-maker. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1489-90 (10th Cir. 1994) (a party's lack of diligence in not immediately seeking reconsideration of the denial of its Motion to Compel Arbitration following a change in the law used by the district court to deny that motion was waiver). As held in *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002): "Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision — 'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'"

Under these authorities, Cequent should be held to have waived arbitration. Cequent pursued needless judicial processes, has shown a lack of diligence in bringing this Petition to resolution, and sought relief beyond just an order compelling arbitration or seeking a stay, all causing waiver. Despite knowing that the Colorado District Court and the Federal Circuit were powerless to compel arbitration, Cequent delayed the resolution of this Petition by choosing to litigate in those forums, and obtained nothing as a result, but two years of delay. Such lack of diligence, and needless consumption of judicial resources, "demonstrate peradventure that [the defendant] has acted inconsistently with the right to arbitrate." *Mulderink v. RSB Enterprises, Inc.*, No. 10 C 7978, 2012 WL 1205728, at * 2 (N.D. Ill. Apr. 11, 2012).

As noted in *Mulderink*, "Though it is entirely legitimate for a contracting party to prefer arbitration to litigation, using a contractual right to arbitration as a means of evading adjudication of a dispute is something else altogether. It is quite clear at this point that [the defendant] has used the arbitration agreement as a stall tactic[.]" *Id.* at *2. Rather than reward Cequent for its stall tactics over the last two years, ***which all could have been avoided if Cequent had only filed its Petition in the right court (here) in the first instance or withdrawn its Colorado Motion***, this Court should hold that Cequent has acted inconsistently with any right to arbitrate, and waived its right to compel arbitration now.

### III. The Settlement Agreement Unambiguously Carves Out Future Disputes Over Infringement From the Arbitration Provision.

Cequent's Petition also does not show that the arbitration clause in the Settlement Agreement applies to the particular type of controversy presented in the Colorado Lawsuit. LGA acknowledges that the Seventh Circuit has held that an arbitration provision using "arising out of" language (as the Settlement Agreement contains), is broad in scope and reaches all disputes that have their origin in the contract, regardless of whether the dispute requires interpretation of the contract. *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012).[2] Yet the mere proposition that the LGA-Cequent Settlement Agreement had some "broad" language in the arbitration provision is not dispositive.

The Court's primary duty in interpreting a contract is to give effect to the parties' intentions where they are unambiguously expressed. Here, the Settlement Agreement unambiguously manifests an intention to exclude entirely from that agreement – including from

---

[2] Notably, the *Gore* decision also held that adding "relating to" language to an arbitration provision that already has the "arising out of" language does nothing to further broaden the scope of the provision: "But 'relating to' does not substantially broaden the scope of an arbitration clause containing 'arising out of' language." *Gore*, 666 F.3d at 1033.

9

the later arbitration provision – all disputes about the future unlawful use of each other's intellectual property:

> Limitation on Releases. The releases in paragraphs 1, 4 and 5 do not (and are not intended to) release or waive any claim, demand, action, or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date.

Exhibit F, Settlement Agreement at 4, ¶ 6. This direct expression of intent to exclude post-settlement infringement conduct limits the arbitration provision by carving out such disputes from the agreement in their entirety. By contrast, Cequent would ignore this carve out and include within the arbitration provision the very matters that "are not intended to" be addressed by the Settlement Agreement. Such an interpretation cannot stand in the face of the unambiguous expression of intent in ¶ 6.

Illinois law requires the Settlement Agreement be viewed in its entirety, and courts may not construe its provisions in isolation (as Cequent would have this Court do). The arbitration provision in ¶ 23 of the Settlement Agreement should be interpreted in light of the parties' direct expression of limitation in ¶ 6, where they excluded "any claim, demand, action, or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date." Not only did the parties use identical language ("arising from") in the two paragraphs to show the provisions are related, but it is evident from the expressed limit in ¶ 6 that arbitration in ¶ 23 must involve disputes over the "Agreement." Read together, these provisions show that the intent was to limit arbitration only to disputes arising out of the performance of the Settlement Agreement. Hence, the arbitration provision does not apply here.

**IV.    The Arbitration Provision Is Confined To Disputes on the Parties' Performance under the Settlement Agreement Alone.**

The arbitration provision in the Settlement Agreement does not apply here. The arbitration clause deals exclusively with disputes that might occur in the parties' performance of

the Settlement Agreement. That agreement affirmatively required that Cequent pay money to phase out its inventory (¶ 2), that each party release the other for past conduct (¶¶ 4 & 5), that the parties use their best efforts to get bankruptcy court approval (¶ 3), that Cequent deliver a release by TriMas Corp. following bankruptcy court approval (¶ 4), that LGA was to remove and not republish statements it had made on a website (¶ 7), that neither party was to defame, disparage, or criticize the other for conduct occurring before the settlement's effective date (¶ 7), and that the parties were to file a dismissal of the prior lawsuit (¶ 8). These are the obligations of the Settlement Agreement which the parties agreed to arbitrate if disputes arose in their performance.

By contrast, the claims of the Colorado Lawsuit have nothing to do with the Settlement Agreement obligations. LGA does not assert any claims for breach of the Settlement Agreement. LGA does not assert any claims for breach of the License Agreement that was concluded by the Settlement Agreement. Furthermore, LGA's claims are temporally distinct from the allegations in the prior Colorado lawsuit because all claims explicitly involve actions by Cequent that occurred *after* the LGA-Cequent contractual relationship ended.

Most importantly, LGA's SAC asserts tortious claims of infringement of its intellectual property rights that would exist even if LGA and Cequent had never transacted business before. These claims are founded upon law promoting public policy duties against infringement of legal intellectual property rights that are generally owed to others, outside of any contractual relationship.

Cequent's leap to label the arbitration provision as "broad" by arguing that the phrase in that provision ("arising from and related to") has been construed to be broad and then insisting a "broad" provision covers all matters between the parties, puts the cart before the horse by ignoring the intended, specified target of the arbitration clause: the "Agreement or breach

thereof[.]" Because the "Agreement" referred to in the arbitration clause is a defined term at the very beginning of the contract, the arbitration language is expressly limited to disputes about that Agreement, not disputes about the relationship between the parties in general. Thus, the focus here should be on the intended target of the arbitration provision — the defined term "Agreement" — and if the claims in the SAC are not "Agreement"-based (and they are not), then the arbitration provision does not apply. The intent of the parties and the context of the parties' agreement controls, not the mere application of a label to a phrase.

The arbitration clause deals with the disputes that might occur, post-settlement, but only in the parties' performance of the specific affirmative obligations of the Settlement Agreement. None of those obligations are mentioned in LGA's claims. Those obligations are the *only* ones that the parties agree to arbitrate if disputes arose during their performance. Nowhere in the Settlement Agreement did the parties agree that they would arbitrate the unlawful use of the other's intellectual property. To the contrary, as shown by ¶ 6, that conduct was expressly carved out of the Settlement Agreement. The Colorado Lawsuit is a dispute over Cequent's unlawful use of LGA's intellectual property. Therefore, it is not covered by the Settlement Agreement, and not subject to arbitration.

## V. Cequent's Reasons Why LGA's Claims Relate to the Settlement Agreement Are Mistaken.

Cequent's Petition raises three reasons why LGA's claims purportedly "relate to" the Settlement Agreement. None of them withstand scrutiny.

Cequent first argues that "LGA's claims about Cequent's silent hitch pin sales necessarily 'related to' the Settlement" because "resolving that claim will necessarily require looking to the Settlement to determine whether Cequent complied with or exceeded the 'phase out' quantity

allowed" in the Settlement. Petition at 9-10, ¶¶ 45-46. Cequent's argument misapprehends LGA's claims.

The only mention of the phase-out is in ¶ 25 of the SAC. That paragraph merely says that the phase-out was completed. Contrary to Cequent's argument, LGA does *not* need to prove that there was a phase-out of Silent Hitch Pins, or even that the phase-out is complete, to prevail on its infringement claims. It only needs to prove that it owns valid copyrights, trademark rights and patent rights to the Silent Hitch Pins, and that Cequent is using or copying LGA's intellectual property rights.

Furthermore, arbitrability is to be determined from a review of the plaintiff's claims, not from a review of the defendant's affirmative defenses. Cequent never filed an Answer in the Colorado District Court. Thus, an arbitrator will only decide if Cequent's sales were permitted under the phase-out if Cequent asserts the phase-out covered its sales as an affirmative defense. The arbitrability analysis requires a focus on the actual allegations made, not on a hypothetical, unpled affirmative defense. It follows, then, that the phase-out is irrelevant to LGA's claims (except as background), and the dispute does not "aris[e] from or relat[e] to" the Settlement Agreement.

Second, Cequent argues that the Court must construe the arbitration clause as covering this dispute because LGA purportedly "premises its claims and allegations on the Settlement's termination of the License." Petition at 10, ¶ 49. This, too, incorrectly characterizes LGA's claims.

Although the prior license to Cequent is mentioned in the allegations often (because it explains how Cequent obtained LGA's protected information), *none* of the relief sought in the

13

SAC involves a breach of the License Agreement. In fact, the Settlement Agreement merely restored the parties to the position that they were in *before* the License Agreement.

Cequent's argument that all of LGA's claims are "premised on the termination of the License" is wrong because LGA does *not* have to prove, as part of its infringement case, that the License Agreement was terminated. To the contrary, "[a] plaintiff alleging copyright infringement must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *NTE, LLC v. Kenny Constr. Co.*, No. 14 C 9558, 2016 WL 1623290, at *4 (N.D. Ill. Apr. 25, 2016) (quotation omitted). Because LGA does not have to prove that the License Agreement ever existed or was terminated to prevail on any of its claims, it simply cannot be said that LGA has "premised" its claims on the termination of the License.

Third, Cequent argues that the claims are arbitrable because the "subject matter" of LGA's claims in the Colorado Lawsuit "is the same" as that resolved in the Settlement. Petition at 10, ¶ 55. This, too, is incorrect. The unambiguous text of the Settlement Agreement specifically shows that the parties simply agreed to arbitrate disputes "arising from or relating to *this Agreement* or the breach thereof[.]" Ex. F at ¶ 23 (emphasis added). Had the parties truly wanted to broadly arbitrate all aspects of their relationship, as Cequent's Petition argues, including any future dispute over the "subject matter" of LGA's Products or LGA's IP rights, it would have been child's play for them to do so. Instead, the arbitration provision never mentions either LGA's Products or LGA's intellectual property rights. That there are common parties, common intellectual property rights, and common products between the two lawsuits that were filed in Colorado is not enough to meet Cequent's burden to show that the claims in the Colorado Lawsuit arise from or relate to the Settlement Agreement or a breach thereof. Thus, Cequent's attempt to rewrite the Settlement Agreement should be rejected.

**CONCLUSION**

As shown above, the Court's analysis involves more than taking the single step that Cequent's Petition argues. Cequent has waived any right to compel arbitration by its conduct, inconsistent with any right it may have had. Cequent's Petition also does not show that the parties intended to arbitrate the issues raised in the Colorado Lawsuit. The "arising from or relating to" terminology is not dispositive. Rather, the parties crafted an arbitration provision to cover disputes about the Settlement Agreement or a breach thereof alone. Thus, LGA respectfully asks that the Petition be denied and dismissed.

Dated: June 7, 2016

Respectfully submitted,

  /s/William K. Kane
LOCAL COUNSEL DESIGNATION
UNDER LR 83.15:

William K. Kane (#6194466)
BAKER & HOSTETLER LLP
191 North Wacker Drive, Suite 3100
Chicago, IL 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
*wkane@bakerlaw.com*

and

Thomas M. Haskins III (#17651)
Martin D. Beier (#20188)
SILVER & DEBOSKEY P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000
*haskinst@s-d.com*
*beierm@s-d.com*

*Attorneys for the Defendant*
*LET'S GO AERO, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2016, a true and correct copy of the foregoing **RESPONDENT LET'S GO AERO, INC.'S RESPONSE IN OPPOSITION TO CEQUENT'S PETITION TO COMPEL ARBITRATION [DOC. #1]** was electronically filed with the Clerk of the Court via the United States District Court's CM/ECF system which will send notification of such filing to all attorneys of record.

            By: /s/William K. Kane