# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CEQUENT PERFORMANCE PRODUCTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 14 C 8457 |
| LET'S GO AERO, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

CHARLES P. KOCORAS, District Judge:

Plaintiff Cequent Performance Products, Inc. ("Cequent") filed its Petition to Compel Arbitration in this case on October 27, 2014. *See* Dkt. 1 That Petition seeks to compel Defendant Let's Go Aero, Inc. ("LGA") to arbitrate the declaratory judgment, tort, and patent, copyright, and trademark infringement claims that LGA brought against Cequent in a Colorado district court action entitled *Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, No. 14-cv-1600 (D. Col. filed June 6, 2014) [hereinafter the "Colorado Action"], pursuant to an arbitration provision contained in a Settlement Agreement between the parties that predated the Colorado Action. *See* Dkt. 1-4, ¶ 23; Dkt. 15 in Case No. 14-cv-1600 (Second Amended Complaint or "SAC" in the Colorado Action). For the reasons explained below, Cequent's Petition for Arbitration in this case (Dkt. 1) is granted, this action is dismissed, and Judgment will be entered in favor of Cequent.

## BACKGROUND

The factual and procedural background preceding Cequent's Petition to Compel Arbitration in this case, and the instant Opinion disposing of that Petition, has been lengthy and arduous. A fuller recounting is set out in two prior court decisions, one issued by the district court in the Colorado Action—*Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, 78 F. Supp. 3d 1363 (D. Col. 2015) [hereinafter "*Colorado Decision*"]—and one issued by the United States Court of Appeals for the Federal Circuit dismissing Cequent's appeal of the *Colorado Decision—Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, No. 2015-1308, -- Fed. App'x --, 2016 WL 827985 (Mar. 3, 2016) [hereinafter "*Federal Circuit Decision*"]. For present purposes, the following background will suffice.

Cequent and LGA entered into a License Agreement in 2008. *See* Dkt. 1-1. That Agreement authorized Cequent to make and sell certain "cargo management and towing products" in which LGA claimed patent rights, including a "Silent Hitch Pin" used to connect a vehicle to a towed object. *Id*. at 1-6. In 2010, Cequent sued LGA in a Colorado district court for breach of the parties' 2008 License Agreement and other claims (*see* Dkt. 1-2, at 11-20), and LGA counterclaimed for patent infringement and unpaid royalties. *See* Dkt. 1-3. The parties resolved that lawsuit with a Settlement Agreement in January 2012. *See* Dkt. 1-4. That Settlement Agreement (Dkt. 1-4) terminated the parties' 2008 License Agreement (¶ 1), allowed Cequent to "phase out" 25,792 silent-hitch pins that Cequent had "in inventory or on order" (¶ 2 and Ex. 1), and contained the following arbitration provision (¶ 23):

> 23. <u>Dispute Resolution.</u>  In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the Parties shall use their best efforts to settle the dispute, claim, question, or disagreement.  To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties.  If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules.  Venue for the arbitration proceedings shall be in Chicago, Illinois, and the arbitration shall be conducted by a single neutral arbitrator.

LGA later sued Cequent in the Colorado Action in June 2014.  *See* Dkt. 1-5.  The operative Second Amended Complaint in that case asserts twelve claims:  for patent, trademark, and copyright infringement; declaratory judgment as to such intellectual property rights; and other torts.  *See* Dkt. 1-7.  Cequent responded with a Motion to Compel Arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or to stay the action pursuant to 9 U.S.C. § 3, contending that all of LGA's claims in the Second Amended Complaint were subject to the arbitration provision in the parties' 2012 Settlement Agreement.  *See* Dkt. 1-8.  LGA opposed Cequent's motion, arguing that LGA's claims were not subject to the arbitration provision, and that the Colorado court lacked jurisdiction to compel arbitration in the forum where that provision required arbitration to be held (*i.e.*, Chicago).  *See* Dkt. 1-9 (citing *Ansari v. Qwest Comm. Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) ("where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4" (citing 9 U.S.C. § 4)).

Then the wheels came off. In October 2014, LGA sought and obtained an entry of default against Cequent in the Colorado Action (because it had moved to compel arbitration rather than answer), *see* Dkt. 17, ¶ 4; and three days later, Cequent filed its Petition to Compel Arbitration in this Court. *See* Dkt. 1. That Petition represented that Cequent would "ask the Colorado district court to either stay the case pending this Court's resolution of this petition or to dismiss [the Colorado Action] for improper venue." *Id.* at ¶ 33. In a reply brief filed in the Colorado action the same day, Cequent did in fact ask the Colorado court to dismiss or stay the Colorado Action pending this Court's resolution of Cequent's Petition for Arbitration here, but added that if the Colorado court believed "it has the authority to compel arbitration in Chicago, Illinois, then it should do so." Dkt. 37-5, at 2.

After being served with Cequent's Petition in this case, LGA moved to stay this action, asserting that Cequent's Motion to Compel Arbitration in the Colorado Action was "awaiting a ruling by the Colorado District Court," that Cequent had "defaulted" on LGA's claims in that litigation, and that Cequent's default in Colorado rendered its Petition to Compel Arbitration in Illinois "moot." Dkt. 17, ¶¶ 5-9. Given Cequent's default in Colorado on the very claims for which it was seeking to compel arbitration in this case, and the Colorado court's pending decision on Cequent's Motion to Compel Arbitration in the Colorado Action, this Court stayed all proceedings in this action on December 11, 2014. *See* Dkt. 21. The Colorado court then set aside Cequent's default seven weeks later on January 28, 2015. *See Colorado Decision*, 78 F. Supp. 3d at 1373-74.

At the same time, the Colorado court ruled on Cequent's Motion to Compel Arbitration, finding six of LGA's claims in that case subject to arbitration under the parties' 2012 Settlement Agreement (because the court concluded that they involved or potentially involved conduct prior to that Agreement), and the remaining six claims non-arbitrable. *Id*. at 1374-79. But the Colorado court declined to compel arbitration on any claims because, under the Tenth Circuit's decision in *Ansari*, it lacked jurisdiction to compel arbitration in a different forum. *Id*. at 1379-80. It therefore stayed proceedings on the claims it determined to be arbitrable pending this Court's *de novo* determination of their arbitrability, and ordered additional briefing on whether to stay proceedings on the claims it determined to be non-arbitrable. *Id*.

Cequent appealed the *Colorado Decision* (solely as to the six claims the Colorado court found non-arbitrable) to the Court of Appeals for the Federal Circuit, which has appellate jurisdiction over appeals of interlocutory orders in patent cases. 28 U.S.C. §§ 1292c)(1), 1295(a)(1). But the Federal Circuit dismissed Cequent's appeal because the *Colorado Decision* was not reviewable under 9 U.S.C. § 16(a)(1), which authorizes immediate appeal of certain orders relating to arbitration. *See Federal Circuit Decision*, 2016 WL 827985, at *1, 4-7. The Federal Circuit explained that it was precluded under Tenth Circuit precedent (specifically, *Ansari*, which it was obliged to follow on the point) from compelling arbitration on the appealed claims in a forum outside of Colorado; and since the Colorado court had not yet ruled on Cequent's request to stay proceedings on those claims, the *Colorado Decision* provided no other order to review under § 16(a)(1). *Id*.

Although the Federal Circuit's Opinion dismissing Cequent's appeal did not address the arbitrability of any of LGA's claims in the Colorado Action, it did make one point eminently clear. Both sides represented to the Federal Circuit, and that court acknowledged in its Opinion, that this Court (the Northern District of Illinois) would review *de novo* the arbitrability of **all** of LGA's claims in the Colorado Action—including the claims that the Colorado court found to be arbitrable and those that it found to be non-arbitrable—LGA having "so stated in its brief" in the Federal Circuit, "waiving any preclusion." *Id*. at *4-5 ("both parties agree that the arbitrability issue will be decided de novo by the district court in Illinois"). Cequent then sought to lift the stay in this case to pave the way for such a determination (Dkt. 27); the Colorado court "administratively closed" the Colorado Action "subject to re-opening at the request of either party upon either completion of arbitration proceedings or a ruling that does not compel arbitration" (Dkt. 64 in Case No. 14-cv-1600); and this Court granted Cequent's motion to lift the stay in this case and set a briefing schedule on its Petition to Compel Arbitration (Dkt. 32), which the Court now addresses.

## DISCUSSION

While LGA's venue objection to Cequent's arbitration Petition has now been resolved, it continues to oppose arbitration of any of its claims in the Colorado Action. In addition to its argument that none of the claims are subject to the arbitration clause in the parties' 2012 Settlement Agreement, LGA now opposes arbitration on the additional ground that "Cequent has, through its conduct, waived its right to compel arbitration." Dkt. 37, at 3. This Court rejects both arguments.

## I. Waiver

LGA's waiver argument reasons that "Cequent has waived its right to arbitrate via several procedural choices made since the Petition was filed" that have "resulted in a delay to this Court hearing the Petition, which is inconsistent with a party's obligation to pursue its right to arbitrate with all diligence." Dkt. 37, at 5-6. LGA complains: "Despite knowing that the Colorado District Court and the Federal Circuit were powerless to compel arbitration, Cequent delayed the resolution of this Petition by choosing to litigate in those forums, and obtained nothing as a result, but two years of delay." *Id*. at 8. As LGA acknowledges, however, "the essential question is whether, ***based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate***." *Id*. at 7 (brackets omitted, emphasis by LGA, quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 588 (7th Cir. 1992)). While the procedural choices made by both sides in this dispute certainly contributed to some delay, the Court does not regard the choices made by Cequent to have been "inconsistent with the right to arbitrate."

As to Cequent's motion to compel arbitration in the Colorado Action (despite Tenth Circuit precedent holding that the Colorado court could not compel arbitration in Chicago), Cequent points out that the request was not improper at the outset, since (as the Federal Circuit acknowledged), LGA could have "simply waived its venue objection to Cequent's Colorado motion, as parties often do." Dkt. 40, at 6; *see also Federal Circuit Decision*, 2016 WL 827985, at *2 ("The *Ansari* rule can be waived . . . but here Let's Go Aero invoked the *Ansari* rule."). Cequent further explains that it

was required to maintain that motion in Colorado even after LGA invoked the *Ansari* rule, "because it needed the requested stay of litigation to preserve its right to arbitrate." Dkt. 40, at 6. That position was not unreasonable. "While courts cannot grant a § 4 order to compel arbitration unless they sit in the same district as the arbitration venue, a § 3 order to stay pending arbitration has no such requirement." *Kawasaki Heavy Indus. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011). Additionally, as noted above, once LGA had invoked the *Ansari* rule and Cequent filed its Petition in this Court, it asked the Colorado court to stay the Colorado Action or dismiss that case "for improper venue," Dkt. 43 in Case No. 14-cv-1600, at 2, which also was proper. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) (motion to dismiss for improper venue "is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district").

Nor does Cequent's appeal of the *Colorado Decision* to the Federal Circuit evidence a waiver of its right to arbitrate. Granted that the *Colorado Decision* provided no basis for appeal—as the Federal Circuit correctly held—both because its denial of Cequent's motion to compel arbitration could not be reversed under *Ansari*, and because it did not rule (it only set a briefing schedule) on Cequent's request for a stay of the appealed claims. *See Federal Circuit Decision*, *Federal Circuit Decision*, 2016 WL 827985, at *5-7. But while Cequent's arguments for appellate jurisdiction proved incorrect, this Court does not regard them as "inconsistent with the right to arbitrate"—in fact, quite the opposite. As even LGA acknowledges, Cequent urged

the Federal Circuit (albeit incorrectly) that "it would be more efficient to decide" the question of arbitrability in the context of that appeal (since an appellate court "decides the arbitrability question *de novo*," in any event), "rather than remanding to have the Illinois district court decide Cequent's petition to compel arbitration and then deciding the arbitrability question on an appeal from that order." Dkt. 37-2, at 1; Dkt. 37, at 1 (quoting same). If anything, this plea demonstrated Cequent's commitment to arbitration by urging a quicker route to that result.[1]

Moreover, an additional basis for the Federal Circuit's conclusion that it lacked appellate jurisdiction (because any arbitrability opinion it rendered would be merely "advisory") was LGA's agreement that "the arbitrability conclusion" of the Colorado court lacked "any preclusive effect," and that arbitrability was thus "subject to de novo decision by" this Court. *Id.* at *6. Given that agreement, the Federal Circuit concluded that even its vacatur of the Colorado court's determination of non-arbitrability of the appealed claims "would have no discernible concrete legal effect." *Id.* at *5. That agreement thus paved the way for this Court's *de novo* determination of Cequent's Petition to Compel Arbitration—an event that LGA (not Cequent)

---

[1] Notably, this argument by Cequent that the Federal Circuit might have obviated a further appeal to that court by deciding arbitrability during Cequent's last appeal, rather than in an appeal from this Court's decision on the instant Petition, assumed that an appeal of any such decision by this Court should be made to the Federal Circuit, as opposed to the Seventh Circuit. But the Federal Circuit declined to "address that question." *See Federal Circuit Decision*, 2016 WL 827985, at *5 n.3 ("If this dispute continues, and leads to a decision by the Illinois district court in the action filed under the Arbitration Act, a question will arise about whether an appeal will come to this court or to the Seventh Circuit. We merely note but do not address that question."). This Court similarly notes but does not address that question.

successfully sought to stay fifteen months earlier. To be clear, this Court does not fault LGA for seeking a stay of this action while Cequent was in default in the Colorado Action, since the claims Cequent sought to arbitrate here had been defaulted there. Still, if LGA was anxious to have arbitrability decided as soon as possible, nothing prevented it from seeking to lift that stay when the Colorado court set aside Cequent's default on January 28, 2015, and acceding to what it ultimately agreed before the Federal Circuit—this Court's *de novo* determination of arbitrability—thereby avoiding a significant portion of the delay over which it now complains. Under these circumstances, this Court rejects the notion that Cequent alone delayed this Court's ability to address the instant Petition, and that Cequent's prior efforts to have arbitrability decided even sooner by the Colorado court and the Federal Circuit were "inconsistent with the right to arbitrate."

## II. Arbitrability

Having concluded that Cequent did not waive its right to arbitration under the parties' 2012 Settlement Agreement, the Court now turns to the issue of whether that Agreement requires arbitration of LGA's twelve claims in the Colorado Action. Like the Colorado court, this Court concludes that claims 1, 2, 3, 6, 10, and 12 in the Colorado Action plainly raise issues "arising from or relating to" that Agreement "or the breach thereof," as provided in its arbitration clause. *Colorado Decision*, 78 F. Supp. 3d at 1374-80. But in addition, this Court further concludes that the arbitration clause also requires the Court to grant Cequent's Petition as to the six claims that the Colorado court found non-arbitrable. *Id.*

LGA opposes arbitration of any of its claims in the Colorado action, insisting that the arbitration clause in the parties' 2012 Settlement Agreement "deals exclusively with disputes that might occur in the parties' performance of the Settlement Agreement," and that "the claims of the Colorado Lawsuit have nothing to do with the Settlement Agreement obligations." Dkt. 37, at 10-11. But even LGA concedes that the Settlement Agreement allowed Cequent "to phase out its inventory" of Silent Hitch Pin products. *Id*. at 11-13. LGA's Second Amended Complaint in the Colorado action plainly raises issues "arising from or relating to" that provision "or the breach thereof" by alleging that Cequent "distributed infringing products, including the Silent Hitch Pin," after "the termination of the License Agreement," for which LGA sues for patent infringement and other claims. *See*, *e.g.*, Dkt. 1-7, ¶ 16 and Counts I-XII. In this Court's view, since the parties' License Agreement was terminated by their Settlement Agreement, and the Settlement Agreement gave Cequent the right to sell at least some Silent Hitch Pin inventory thereafter, LGA's claims in the Colorado Action accusing Cequent's sales of Silent Hitch Pins after termination of the parties' License Agreement plainly arise from and relate to the Settlement Agreement or the breach thereof, and thus fall within the scope of its arbitration provision. *See* Dkt. 1-4, ¶¶ 1-2, 23.

Even the quantity allowed under the Settlement Agreement's "phase out" is disputed on the face of LGA's Second Amended Complaint in the Colorado Action. Although LGA's Response to Cequent's Petition here omits mention of the quantity of Silent Hitch Pins that Cequent was entitled to "phase out" under the parties'

Settlement Agreement, Exhibit 1 to that Agreement states (as the Federal Circuit noted) that "Cequent [was] permitted to continue selling some 25,792 units of a product called Silent Hitch Pins that Cequent already had in inventory." *Federal Circuit Decision*, 2016 WL 827985, at *1; Dkt. 1-4, ¶ 2 and Ex. 1. But LGA's Second Amended Complaint in the Colorado Action alleges "a permitted phase-out" of only "approximately 23,300 Silent Hitch Pins" (Dkt. 1-7, ¶ 25), an allegation incorporated into each of its claims. *See* Counts I-XII. LGA's claims in the Colorado Action accusing Cequent's sales and marketing of Silent Hitch Pins after termination of the parties' License Agreement (at least 1-8 and 11-12) thus raise issues regarding the quantity of Silent Hitch Pins that Cequent was allowed to "phase out" under that Agreement. Again, in this Court's view, any such dispute is plainly one "arising from or relating to" the Settlement Agreement "or the breach thereof," and thus arbitrable.

LGA attempts to resist this conclusion by pointing to the Settlement Agreement's "Limitation on Releases," which states that the releases set out in that Agreement "do not (and are not intended to) release or waive any claim, demand, action or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date" of the Settlement Agreement. Dkt. 37, at 9-10 (quoting Dkt. 1-4, ¶ 6). According to LGA, this Limitation "unambiguously manifests an intention to exclude entirely from that agreement – including from the later arbitration provision – all disputes about the future unlawful use of each other's intellectual property." *Id*. But as the Colorado court acknowledged, LGA's claims in the Colorado Action are not limited to events post-dating the parties' Settlement

Agreement.  *See Colorado Decision*, 78 F. Supp. 3d at 1375-79 (citing SAC, Dkt. 1-7, ¶¶ 7, 20, and claims 1-3, 6, 10, 12).  Such retrospective claims relate to both the 2012 Settlement Agreement and the 2008 License Agreement (which the Settlement Agreement terminated), if only because they require a determination of whether the conduct at issue was permitted or released under those Agreements.

Moreover, while the Settlement Agreement does preserve claims for future "unlawful use of the other's intellectual property" (*e.g.*, claims 9-10 in the Colorado action, as well as others) that reservation hardly disassociates the Settlement Agreement or its arbitration clause from such claims, since they, too, require reference to that Agreement to determine whether they involve conduct (such as Cequent's phase-out and/or related marketing) that was permissible under that Agreement.  Indeed, even LGA concedes that the Settlement Agreement's arbitration clause is not limited to disputes over pre-settlement conduct, and instead embraces "disputes that might occur, post-settlement."  *See* Dkt. 37, at 12.  That concession is required by the clause's plain reference to disputes "arising from *or* relating to this Agreement *or* the breach thereof."  Dkt. 1-4, at 9 (emphasis added).  Contrary to LGA's contentions, moreover, that language covers more than just "the parties' performance of the specific *affirmative obligations* of the Settlement Agreement," as LGA contends.  *Id*. (emphasis added).  By addressing disputes "arising from or relating to" that Agreement, it also applies to disputes over *rights* under that Agreement (as opposed to "affirmative obligations"), such as Cequent's right to "phase out" its inventory of Silent Hitch Pins which LGA challenges in the Colorado Action.

The Settlement Agreement's arbitration clause requires the parties to "use their best efforts to settle" all such disputes. Dkt. 1-4, ¶ 23. And, importantly, if "they do not reach such solution within a period of 60 days, then upon notice by either party to the other, ***all disputes, claims, questions, or differences*** shall be finally settled by arbitration administered by the American Arbitration Association ***in accordance with the provisions of its Commercial Arbitration Rules***." *Id*. (emphasis added). Such language is significant for both its breadth ("all disputes, claims, questions, or differences") and its incorporation of the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). *See Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) (where parties "agree to arbitration pursuant to the rules of the American Arbitration Association" they "incorporate the AAA's rules into the arbitration agreement"). Rule 7(a) of the AAA's Commercial Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to ***the arbitrability of any claim or counterclaim***." AAA, Commercial Arbitration Rules ¶ R-7(a) (emphasis added). Given this AAA requirement that the arbitrator decide "the arbitrability of any claim," district courts in this circuit (and courts of appeals in other circuits, including the 1st, 2d, 5th, 8th, 9th, 11th, and Federal Circuits) have consistently held that a clause requiring arbitration according to AAA Rules requires the arbitrator to resolve arbitrability disputes.[2]

---

[2] *See*, *e.g.*, *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, -- F. Supp. 3d --, 2016 WL 3027902, at *4 (N.D. Ill. May 27, 2016) ("Six other circuits have directly

Two of the circuit courts of appeals that appear not to have yet addressed this issue happen to be two of the three in which the parties here have now litigated—the Seventh and Tenth—although district courts in both have adopted the "consensus view" stated above.[3] But this Court's research has uncovered one Seventh Circuit decision stating in apparent *dictum* that a provision requiring arbitration "in accordance with" AAA rules was "not broad enough to compel the conclusion that arbitrability is itself an arbitrable issue." *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004). For two reasons, however, this Court concludes that *Oblix* suggests no likely departure by the Seventh Circuit from the "consensus view."

---

addressed the question . . . with all concluding that such an incorporation qualifies as a clear and unmistakable delegation of arbitrability questions to the arbitrator. . . . The court adopts the consensus view."); *Cooks v. Hertz Corp.*, No. 3:15-CV-0652, 2016 WL 3022403, at *4 (S.D. Ill. Apr. 29, 2016) ("By agreeing to have the AAA's rules govern the parties' arbitration, they also agreed to leave the issue of whether Cooks's claims belong in arbitration to an arbitrator." (citing cases)); *Helferich*, 51 F. Supp. 3d at 720 ("other courts in this District have agreed with the various appellate courts in other circuits and come to the same conclusion" (collecting cases)).

[3] *See*, *e.g.*, *Allscripts*, 2016 WL 3027902, at *4 ("As far as the court can tell, the Seventh Circuit has never decided whether an arbitration agreement's incorporation of the AAA's Rules qualifies as a 'clear and unmistakable' agreement to arbitrate arbitrability."); *Getzelman v. Trustwave Holdings, Inc.*, No. 13-cv-02987, 2014 WL 3809736, at *3 (D. Col. Aug. 1, 2014) ("[T]he seven circuits that have explicitly addressed this question have held that the express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (quoting and citing cases); *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 2013 WL 1332028, at *5 and n. 18 (E.D. Va. Mar. 29, 2013) ("Although the Tenth Circuit has arguably held to the contrary, a close reading of that decision suggests that the court considered the breadth of the arbitration clause, but did not explicitly consider or address whether incorporation of the AAA Commercial Rules satisfied the 'clear and unmistakable' test. . . . Thus, it is not surprising that several district courts within the Tenth Circuit have held that the incorporation of the AAA Commercial rules satisfies the 'clear and unmistakable' test" (citing cases and discussing *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998))).

First, *Oblix* was decided before the Supreme Court's decision in *Preston v. Ferrer*, 552 U.S. 346 (2008). *Preston* also involved an arbitration clause that provided for "arbitration in accordance with the AAA rules," which the Court took to be an "incorporation" of those rules into the arbitration clause. *Id.* at 362. "One of those rules states that 'the arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.'" *Id.* (quoting AAA, Commercial Arbitration Rules ¶ R-7(b)). The *Preston* Court held that the arbitration clause's incorporation of this AAA Rule (by requiring arbitration "in accordance with the AAA rules") in turn required the arbitrator to determine contract validity issues pursuant to AAA Rule 7(b), despite a choice-of-law provision in the agreement containing the arbitration clause that otherwise would have required such validity issues to be decided by the Labor Commissioner. *Id.* at 362-63. In other words, the arbitration clause's "adoption" of AAA rules "superseded" the choice-of-law provision and required the arbitrator to decide validity issues. *Id.* at 349-50, 363.

Although *Preston* involved AAA Rule 7(b), rather than Rule 7(a), the analysis and outcome should be the same. That is, the requirement in the clause at issue here of arbitration "in accordance with" the AAA's Commercial Arbitration Rules (Dkt. 1-4, ¶ 23) serves to adopt and incorporate AAA Rule 7(a) into that clause, and thus requires the arbitrator to decide the issues addressed by that Rule, namely arbitrability. For this reason alone, this Court concludes that the Seventh Circuit would likely concur with the many other circuit courts of appeals that have so held. *See supra* notes 2-3 and accompanying text. But there is also another reason that the Seventh

Circuit's decision in *Oblix* suggests no contrary result here—the arbitration clause at issue also states outright that "***all*** disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules." *Id*. (emphasis added). In this Court's view, "all disputes" includes arbitrability disputes.

In *Oblix*, by contrast, the arbitration agreement addressed "disputes about compensation" and "controversies 'arising out of or relating to' the employment agreement" at issue. 374 F.3d at 490. While the court considered this to be "a broad arbitration agreement," it was "not broad enough to compel the conclusion that arbitrability is itself an arbitrable issue." *Id*. But here, the arbitration clause first requires the parties to "use their best efforts to settle" "any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof." Dkt. 1-4, ¶ 23. As explained above, this Court concludes that this broad language embraces all of LGA's claims in the Colorado Action. But the clause *further* provides: "If they do not reach such solution . . . ***all disputes, claims, questions, or differences*** shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules." *Id*. (emphasis added). Such language not only incorporates the AAA's Commercial Rules, it does so as to "all disputes," including arbitrability. For that reason as well, the Court concludes that all of LGA's claims are subject to the arbitration clause, with the arbitrator to determine any remaining disputed arbitrability issues as required under Rule 7(a) of the AAA's Commercial Arbitration Rules.

## CONCLUSION

For the foregoing reasons, Petitioner Cequent Performance Products, Inc.'s Petition to Compel Arbitration [1] is granted in its entirety; the in-court ruling set for August 2, 2016, is stricken and no appearance shall be made; this action is dismissed; and Judgment will be entered in favor of Cequent.

Dated: July 28, 2016

Charles P. Kocoras
United States District Judge